UNITED STATES of America, Plaintiff–Appellee,

v.

Robyn Lynn MAISEL, Defendant–Appellant.

No. 93–5179.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 29, 1993.

Decided Dec. 21, 1993.

Axel Kleiboemer, Washington, DC, argued, for defendant-appellant.

Joseph Harrison Young, Asst. U.S. Atty., Baltimore, MD, argued (Gary P. Jordan, U.S. Atty. and Ethan L. Bauman, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before HALL, WILKINSON, and LUTTIG, Circuit Judges.

## OPINION

LUTTIG, Circuit Judge:

Appellant Robyn Lynn Maisel appeals from her conviction in the United States District Court for the District of Maryland on two counts of converting government property in violation of 18 U.S.C. §.641. Finding no merit in her arguments, we affirm.

### I.

Maisel was a career employee of the National Security Agency (NSA) with supervisory responsibility over eight employees. She was also the executive secretary of a "think tank" within the NSA. In addition to her NSA employment, Maisel owned and operated a liquor store.

In the spring of 1991, the NSA Office of Inspector General (OIG) began investigating the disappearance of two Zenith laptop computers that Maisel had ordered in 1989, but had never. entered into the NSA's inventory control system. When confronted by the OIG on June 3, 1991, Maisel admitted having the laptops at her home, but claimed that she used them for work-related projects. That same day, at her liquor store, Maisel returned one of the missing laptop computers to the NSA investigating agents. The second laptop was retrieved from Maisel's home, along with an Epson FX–1050 printer, an optical character reader and computer software, all of which Maisel readily conceded to be property of the NSA. At the time, Maisel stated that she possessed no other government equipment. She was stopped eight days later, however, attempting to return an IBM personal computer to the NSA.

Maisel was indicted on four counts of criminally converting government property to her own use in violation of 18 U.S.C. § 641. At trial, Maisel claimed that she used the equipment in question to develop systems for tracking the NSA's computer assets. The government, however, produced evidence that the laptops contained current data from Maisel's liquor store, including pricing, payroll, checking and sales listings. *See* J.A. at 119–44. Although no such information was found in the IBM computer, because its memory had evidently been erased by the time Maisel returned it to the NSA, a former employee from Maisel's liquor store testified that he had used the very same IBM computer for liquor store business, and that he had also observed Maisel using a Zenith laptop computer at the store.

The jury convicted Maisel on two of the four conversion counts for her unauthorized

use of the Zenith laptops and the IBM personal computer. Maisel appeals that conviction.

## II.

Maisel contends on appeal that the district court failed properly to instruct the jury as to the *mens rea* element for criminal conversion and as to the meaning of a "serious interference" with the government's right to control its property. We reject both contentions.[1]

■ Maisel argues that "knowingly convert[ing]" property of the government, 18 U.S.C. § 641, requires a "violation of a known legal duty *or* a disregard for what the law may be." Appellant's Br. at 16–17. In essence, as evidenced by her citation to *Liparota v. United States,* 471 U.S. 419, 436, 105 S.Ct. 2084, 2093, 85 L.Ed.2d 434 (1985) (White, J., dissenting), *see* Appellant's Br. at 12, Maisel argues that the *mens rea* for conversion includes actual knowledge of the law proscribing conversion. The Supreme Court specifically rejected this very argument in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). There, in language that could hardly be clearer, the Court held that criminal conversion only requires "knowledge of the facts ... *not necessarily the law,* that made the taking a conversion." *Id.* at 271, 72 S.Ct. at 254 (emphasis added).

■ The district court's instruction fully satisfied *Morissette's* requirement that the defendant know the fact or facts that render her taking a conversion. Here, that fact was that Maisel's use of government property was unauthorized. *See United States v. May,* 625 F.2d 186, 193 (8th Cir.1980) (conversion may include "use in an unauthorized manner or to an unauthorized extent" where such use amounts to a serious violation of owner's right to control) (quoting *Morissette,* 342 U.S. at 272, 72 S.Ct. at 254). Not only

did the district court require that Maisel "[know] that the property belonged to the government, and *that her use of the property was unauthorized,*" it even instructed that the jury could not convict Maisel unless "she knew ... that she was doing something wrong." J.A. at 92 (emphasis added).

■ There is likewise no merit to Maisel's contention that the district court's *mens rea* instructions "precluded the jury from giving proper weight" to her claim that she never knew her use of the equipment was unauthorized. Appellant's Br. at 11; *see id.* at 15–16. Given the court's express instruction that Maisel could not be convicted of conversion unless she "*knew* ... that her use of the property was unauthorized," J.A. at 92 (emphasis added), the jury could only have convicted Maisel after considering and rejecting her good-faith defense. Whether or not Maisel had knowledge of any particular NSA regulations regarding use of its computer equipment, the jury properly found that Maisel knew that surreptitiously absconding from NSA premises with over $17,000 worth of computer equipment, and using that equipment for more than a year in the operation of her own liquor store, constitutes an unauthorized use of government property.

■ Maisel also challenges the district court's failure to define "serious interference" in its instruction to the jury that the defendant's exercise of dominion or control over the allegedly converted property must "seriously interfere[ ] with the owner's right to control the use of the property." *Id.* at 90. Maisel cites no authority—and we are unaware of any—that requires a definition of the term "serious interference" in the context of a prosecution under section 641. Maisel relies upon *United States v. May,* 625 F.2d at 192 & n. 7, in support of her contention that the district court was required to define the term. *May,* however, neither holds nor even suggests that such a definition is actually required. *Id.*[2]

---

1. Maisel also claims that the district court erred in refusing to define reasonable doubt, and that the district court's instructions coerced a verdict. Neither claim has any merit.

2. *May* could be read as approving of the definition of "serious interference" proposed by the

defendant in that case, although it is not entirely clear that it even did that. It may well be that the court simply approved of the defendant's emphasis on the "serious interference" standard itself. *May,* 625 F.2d at 192 n. 7.

The judgment of the district court is affirmed.

*AFFIRMED.*